UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff | : Criminal No.: 12-303 (NHL) |
| vs. | : |
| ADAM LACERDA, et al., | : |
| Defendants | : |

BRIEF IN SUPPORT OF MOTION FOR A NEW TRIAL PER F.R. CRIM. P.33

1.  FACTUAL BACKGROUND

On September 5, 2013, defendant, Ian Resnick was found guilty after a jury trial. The jury determined that he was guilty on Count 1 of the Superseding Indictment, to wit: Conspiracy to Commit Mail Fraud and Wire Fraud, Count 18 (Mail Fraud), Count 20 (Mail Fraud), Count 32 (Wire Fraud), Count 33 (Wire Fraud), Count 34 (Wire Fraud).

At the conclusion of the government's case, the defendant, Ian Resnick moved for dismissal of the charges pursuant to Rule 29 (a).

On October 14, 2013, the defendant, Ian Resnick filed Post-Trial Motions seeking a judgment of acquittal pursuant to F.R. Crim. P.29 and for a new trial pursuant to F.R. Crim. P.33 (Document 345). These motions were argued before the Court on October 2, 2014. After the Court reviewed the briefs and listened to argument, the Court indicated that it would render a written opinion on this matter and, therefore, withheld any formal ruling. It should be noted that as of this date, those motions filed on October 14, 2013 have not yet been resolved.

In those motions argued before the Court on October 2, 2014, the central focus was the lack of evidence that the government had regarding the Ricky Baker and Dorothy Gerlach matters.

The Court will recall that the argument regarding Ricky Baker was that the government presented to the jury an allegation that Ian Resnick contacted Ricky Baker in July 2010. His testimony was quite specific about the individual who contacted him and labeled that individual as Ian Resnick. He further indicated that Ian Resnick contacted him in July and August 2010. During the course of the trial it became clear that when Mr. Baker was first contacted, Ian Resnick was not an employee at VO Group. It also became clear from the testimony that a co-worker of Mr. Resnick by the name of Vinny Giordano was the individual who actually contacted Mr. Baker initially.

The issues raised regarding Dorothy Gerlach were different. The allegations regarding Dorothy Gerlach were not supported by any testimonial evidence. Mrs. Gerlach did not appear and therefore was not present to offer testimony. The government presented three emails that were exchanged between Mrs. Gerlach and Ian Resnick, none of which suggested any criminal activity on behalf of Mr. Resnick, attached as Exhibit A. The government's evidence was presented by Special Agent Mesisca. Agent Mesisca was allowed to testify in what is commonly referred to as "overview testimony." The overview testimony was objected to at the time but the government was allowed to present it and the jury found Mr. Resnick guilty of criminal allegations regarding Dorothy Gerlach and her claims.

A draft presentence report was circulated by the probation department and a copy was provided to Mr. Resnick and counsel. During the review of the draft presentence

report, probation made a number of allegations regarding potential victims. As a result, defendant, Ian Resnick submitted an objection letter. Among other things defendant Resnick objected to were the allegations of individuals being victims when there was no factual support for these claims presented to the jury or to counsel. As a result of those objections, the government forwarded two CDs containing victim's supporting documents. The first CD was created on January 25, 2015. On March 6, 2015, the second CD was provided to counsel containing vital documentation regarding alleged victimization.

In the course of preparing for sentencing, a number of documents were submitted to counsel that had never been seen before.

On January 4, 2011, an FBI employee by the name of Claudia H. Theibault prepared a 302 investigatory report, attached as Exhibit B. In this report, it is alleged that Dorothy Gerlach advised that if Mrs. Gerlach paid $14,000.00 based on Resnick's claim that the VO Group was making arrangements with banks to pay off loans. The 302 indicates that Gerlach stated that she sent the $14,000.00 to VO Group to pay off her timeshare in Bali Hai in Kauai. Clearly, a statement which would indicate that Mr. Resnick was participating in what has become known as the "bank pitch." The substance of the investigative report would suggest that clearly Mr. Resnick was engaging in illegal activities.

At the same time, in early January 2011 there were emails exchanged between Dorothy Gerlach and the FBI employee by the name of Claudia Theibault. These emails appeared in the victim documents contained on the CD presented by the government. These emails were not presented to the jury. The emails are attached herewith as Exhibit C. A brief reading of the emails would suggest that Mrs. Gerlach did not advise Ms. Theibault by email that Ian Resnick made the representations that are claimed and

contained in the FBI 302. Clearly this information would be impeachment and certainly worthy of the jury's attention. These documents were not presented by the government and were not discovered by counsel while reviewing discovery prior to the trial.

On May 3, 2012, Agent Mesisca appeared before the grand jury to present evidence against the defendants. On page 60 through page 62, he referenced the Gerlach allegations, attached as Exhibit D. He presented information to the grand jury which was consistent with the information provided in the FBI 302. It should be noted that there is no record that Agent Mesisca spoke to Mrs. Gerlach. It appears only that the FBI analyst spoke to Mrs. Gerlach. Accordingly, the testimony Agent Mesisca presented to the grand jury was hearsay. Agent Mesisca said quite specifically that Resnick offered to settle the Gerlach debt for $14,500.00. He further indicated that he could make this offer because Wyndham had sold numerous mortgage loans to various banks and the banks wanted to get the loans off their backs.

It was not the only time that Agent Mesisca parodied the contents of the FBI 302, but this time it was before the jury, attached as Exhibit E. He again went on to reiterate that defendant Resnick offered to settle the Gerlach debt for $14,500.00 and that the reason he could do that was because banks were taking reduced amounts in an effort to resolve the timeshare debts. Clearly indicating to the jury that Mr. Resnick was engaged in activity which was illegal. Again, he was testifying in his role as the case agent and permitted to give overview testimony, which included unsubstantiated hearsay and the impressions of others that did not appear for trial. Significantly, for some unknown reason, Dorothy Gerlach did not appear for trial and testify before the jury.

During the course of preparation for sentencing, another document was forwarded to counsel. It appears to be a handwritten document prepared by Dorothy Gerlach in response to requests from the government. Further, it appears to be the first and only representation by the alleged victim, Gerlach as to what her complaints were regarding VO Group. It is attached here as Exhibit F. She indicates in her handwritten document, "We contracted to purchase 350,000 Wyndham points for $14,500.00. We received contracts and purchase agreements for 231,000 points. The outstanding balance of 119,000 points valued at $4,785.00 have not been received."

There is an absolute absence of any reference to Ian Resnick suggesting that $14,500 would be used to pay off her timeshare debt. Further, there is no other reference made by Mrs. Gerlach that defendant Resnick represented to her the information contained in the 302 investigative report, the grand jury testimony and trial testimony of Agent Mesisca.

The evidence contained in Exhibit E are clearly the actual statements of alleged victim Gerlach. By virtue of the manipulation of clearly false information contained in the 302 and the testimony of the FBI Agent before the grand jury and trial jury, the clear inference was that Ian Resnick was engaged in criminal activity. The newly discovered evidence sheds light on the reality of the Gerlach situation and further highlights the completely unacceptable nature of wide ranging "overview testimony."

2. ARGUMENT

The federal rules of criminal procedure provide relief where it appears that newly discovered evidence can cause a probability of a different verdict.

Under the Federal Rules of Criminal Procedure, relief can be found. "The Court may vacate any judgment and grant a new trial if the interests of justice so requires." F.R. Crim. P.33 (a). A motion for a new trial, "grounded on newly discovered evidence" must be filed within three years after the verdict or the finding of guilty... any motion for a new trial grounded on any reason other then newly discovered evidence must be filed within 14 days of the verdict or the finding of guilty, F.R. Crim. P.33 (b).

Ordinarily, five prerequisites must be met to justify the grant of a new trial on the ground of newly discovered evidence:

1. evidence must be newly discovered (i.e. discovered since the trial concluded);
2. defendant must have used due diligence to discovery evidence;
3. newly discovered evidence must be material to issues before the court;
4. newly discovered evidence is not merely cumulative or impeaching;
5. newly discovered evidence is of such a nature that it would probably require a different result at trial.

These requirements must be met when a defendant claims he was convicted by false testimony, see United States v. Woods 301 F.3d 556, 562 (7th Cir. 2002).

It is further alleged that the government had the handwritten document, Exhibit F, in its possession and in light of its content should have provided it pursuant to its Brady obligations. Case law suggests that when the newly discovered evidence is a product of a Brady violation a new trial may be warranted if the withheld evidence is merely "material" and therefore creates "a reasonable probability" that there would have been a different verdict. See United States v. Joslyn 206 F.3d 144 (1st Cir. 2000).

In explaining the Brady "reasonable probability standard" the Supreme Court has stated the question is not whether the defendant would more likely than not have received a different verdict with the evidence, whether in its absence he received a fair trial...resulting in a verdict worthy of confidence." Strickler v. Green 537 U.S. 263 (288) 119 s. ct. 1936 (1952) 1999.

The Third Circuit has considered the issue of newly discovered evidence to determine whether impeachment evidence is enough to warrant a new trial, explicitly stating that the current question for the Court to ask itself is: "was there a strong exculpatory connection between the newly discovered evidence and the facts that were presented at trial or did the newly discovered evidence strongly demonstrate the critical evidence at the time of trial against the defendant was very likely to have been false." United States v. Quiles 618 F. 3rd 383, 392-93 (3rd Cir. 2010). In this case, it appears that the newly discovered evidence strongly demonstrates that the information presented by the government in their overview testimony was very likely false. There is no question that the document discovered as newly discovered evidence is material to the issue of the guilt or innocence of Ian Resnick with regard to the Gerlach matter. The nature of this evidence is such that if made available to the defendant prior to trial or during the course of the trial it would certainly have raised a reasonable probability of acquittal.

If the jury had been given this information, the likely result of the allegations presented to the jury regarding the Gerlach matter would not have been believed and therefore Resnick would have been acquitted. The evidence clearly raises reasonable doubt as to the innocence of Ian Resnick.

3.   CONCLUSION

The issues presented in this application must be considered with the issues contained in the earlier motion raised by defendant Resnick pursuant to Rule 29 and Rule 33, see Document 345. Those issues have not yet been resolved and must be resolved prior to sentencing. See United States v. Joseph 996 F.2d 36 (3rd Cir. 1993). The defendant respectfully requests that the issues raised earlier be considered in the light of the application made herein. The defendant respectfully requests oral argument on this issue and an evidentiary hearing to determine the true nature of the source of the information contained in the 302, which so clearly is erroneous. After the Court has had an opportunity to hear oral argument and to preside over an evidentiary hearing, defendant Resnick respectfully requests that the Court provide such relief that is deemed necessary and proper.

        Respectfully submitted,

        /s/ Michael E. Riley
        Michael E. Riley, Esquire
        Attorney for Defendant, Ian Resnick

Dated: June 24, 2015